**EFFINGHAM COUNTY BOARD OF EDUCATION, et al., Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

**No. 220–84C.**

United States Claims Court.

Dec. 10, 1984.

Richard J. Harris, Savannah, Ga., attorney of record for plaintiffs. Brennan, Harris & Rominger, Savannah, Ga., of counsel.

Mary Mitchelson, Washington, D.C., with whom was Acting Asst. Atty. Gen., Richard K. Willard, Washington, D.C., for defendant.

## ORDER

REGINALD W. GIBSON, District Judge.

By the complaint filed in this case, the plaintiffs (the Board) seek an order requiring the defendant to accept the Board's notice of termination from coverage of its employees under the Social Security program. Public Law 761, 83d Congress, au-

thorized the Social Security Administration, at the request of any state, to enter into an agreement with such state for the purpose of extending the benefits of the Old Age and Survivors Insurance System to employees of such state or any political subdivision thereof. Such an agreement was entered into with the State of Georgia covering certain employees, and this action seeks to terminate said agreement.

After the complaint was filed in this court, plaintiffs filed, on November 23, 1984, Plaintiffs' Motion To Allow Plaintiffs' Motion And Request For a Rule 14 Order Notifying Third Party to Appear.[1] The third-party sought to be notified by this motion is the State of Georgia.

Rule 14, RUSCC, provides, in pertinent part, as follows:

(a) ... (1) The court, ... on the motion of a party, *may notify any person with legal capacity to sue or be sued and who is alleged to have an interest in the subject matter of any pending action to appear as a party and assert his interest* (if any) therein.

\* \* \* \* \* \*

(3) A motion made by plaintiff ... *shall be filed at the time the complaint is filed.* ... For *good cause shown,* the court *may* allow any such motion to be filed at a later time. (Emphasis added.)

The complaint in this matter was filed in this court on May 2, 1984, thus it is clear that the requirement set forth in the first sentence in RUSCC 14(a)(3) has not been met in that it was filed more than six months late. Nevertheless, the rule provides in the last sentence of said subsection that the court "may" allow such motion to be filed at a later time for "good cause shown." We must therefore examine the plaintiffs' submissions to ascertain whether the delinquency in filing the motion is supported by the requisite "good cause show[ing]."

In their motion for leave to file, plaintiffs proffer the following reasons as warranting a finding of the requisite "good cause shown":

... at the time of the filing of the instant litigation, the Plaintiffs were unaware of the *precise* nature or the extent of the State of Georgia's considerable involvement in the transactions which form a basis for Plaintiffs' suit. Discovery ... [initiated after suit filed] revealed that the State of Georgia has an arguably considerable *contractual* and a manifest constitutional *interest* in the subject matter ... of this litigation.[2]

In determining whether the foregoing allegations are sufficient in fact and in law to constitute the requisite "good cause show[ing]," a brief overview of the historical facts underlying the genesis of this litigation may be helpful.

In accordance with the executed "Federal-State Agreement" dated December 15, 1952, and effective January 1, 1952, between the defendant (Commissioner for Social Security) and the State of Georgia (Employees' Retirement System of Georgia),[3] the insurance system established by Title II of the Social Security Act, as amended, was extended in conformity with Section 218 of the Social Security Act to certain designated employees of the State. Thereafter, on or about July 11, 1974, the Board submitted a "Plan and Agreement" to the Employees' Retirement System of Georgia (the State agency), which was approved on December 31, 1974, extending the insurance system established by Title II, Social Security Act, to services performed by certain designated individual employees of the

---

1. Said motion is viewed, in effect, as a motion for leave to file Plaintiffs' Motion And Request For A Rule 14 Order Notifying Third Party To Appear.

2. Plaintiffs aver that said agreement was not available to it until *after* October 10, 1984, and thus they were not aware of the *"precise"* nature

of the State of Georgia's involvement until after the complaint was filed.

3. The latter administers participation of the Effingham County Board of Education (Board) and other political subdivisions of Georgia in the Social Security program.

Board, including but not limited to the individual plaintiffs herein, to be effective on September 1, 1974.

The "Federal-State Agreement" provided, *inter alia,* that the State agency may terminate said agreement (in its entirety or with respect to any coverage group) upon two years advanced notice in writing to the Administrator (effective at the end of a calendar quarter specified in the notice). It also provided, in order to terminate coverage, that the agreement must have been in effect (and the coverage group included) for a period not less than five years prior to receipt of such notice.

Similarly, the "Plan and Agreement" submitted by the Board and approved by the State agency provided that the Board (political subdivision) may request the State agency to take all necessary steps with the Social Security Administration (§ 218(g), Social Security Act), to terminate the "Plan and Agreement" with respect to any coverage group.

In accordance with the foregoing provisions, on or about October 14, 1981, more than five years after the inclusion of employees of the Board under such coverage, the State agency (Employees' Retirement System of Georgia) duly requested the Social Security Administration to terminate the coverage for employees of the Board effective December 31, 1983. Said request was subsequently acknowledged and agreed to by the Social Security Administration in a letter to the State agency dated November 3, 1981, which was to become effective on December 31, 1983.

However, in view of Public Law 98–21, § 103(a), amending § 218(g) of the Act, 42 U.S.C. § 418, which *became effective on* or about *April 20, 1983,* an impediment to the foregoing termination provisions was promulgated which provided, regarding the termination of an agreement, that:

(g) No agreement under this section may be terminated, either in its entirety or with respect to any coverage group, on or after the date of the enactment of the Social Security Amendments of 1983.

(b) The amendment made by subsection (a) shall apply to any agreement in effect ... on the date of the enactment of this Act, without regard to whether a notice of termination is in effect on such date, and to any agreement ... which may become effective ... after that date.

In addition to the foregoing, plaintiffs state that the State of Georgia has previously been requested by them to voluntarily participate in this proceeding; however, it has declined to do so. The Attorney General's letter dated September 13, 1984, conclusively establishes that the State has no concerns in this litigation *which it feels compelled to protect by its presence as a party.*[4]

In opposition to plaintiffs' position, defendant forcefully argues that this court should deny said motion(s) because (i) "Georgia has no 'interest' in this action"; (ii) this court has no jurisdiction over third-party claims such as plaintiffs seek to postulate here; and (iii) plaintiffs have not made the required "good cause show[ing]" sufficient to invoke the discretion of this court.

■ Although the court finds that the State's assertions demonstrate that it has no concerns in this litigation which it feels obligated to protect by its presence as a party, that is not to say that it has no "interest" in this action in the context envisioned by RUSCC 14. Pursuant to the foregoing agreement(s), the State (Employees' Retirement System of Georgia) pays the employer's portion of the FICA tax and, to the extent that plaintiffs fail to prevail in this litigation, it "continues to be

---

4. In said letter, the Attorney General stated as follows:

> The Employees Retirement System believes that its role in this matter is that of administering the provisions of the Plan as they may be changed or as they may be amended by congressional action. As such, they do not

> wish at present to become a party in the litigation filed by the Effingham County Board of Education but rather wish to await the outcome of judicial interpretation of the constitutionality or unconstitutionality of the 1983 amendments.

liable for contributions on wages of its employees." This monetary obligation is certainly an "interest" in the subject matter of this action within the context of RUSCC 14(a), and this court so holds. Thus, this court disagrees with defendant's initial contention that Georgia has no "interest in the subject matter of ... [this] action."

We agree with the second point raised by defendant, that this court would have no jurisdiction to render judgment over Georgia should the State become a party. *Uram v. United States*, 216 Ct.Cl. 418, 420 (1978), teaches that:

> Unless the Government asserts a claim for the recovery of money from the third party in question or unless the third party asserts a claim or an interest in a claim against the Government this court is not empowered to render judgment against that third party.

Since there is no evidence that either of the two foregoing situations will obtain if the State of Georgia becomes a party, this court holds that it would lack jurisdiction to render any judgment against said State.

Notwithstanding the want of subject matter jurisdiction over the State of Georgia, we believe that such fact does not, *ipso facto*, require the denial of a notice motion pursuant to RUSCC 14(a)(1). In *Uram v. United States*, the predecessor Court of Claims stated in passing on its Rule 41(a) (RUSCC 14 is similar thereto in all material respects) that:

> This rule requires no jurisdictional evaluation prior to the issuance of notice, but merely requires that a person "appear" to have an interest. It is well settled that a determination that a person should receive "notice" under Rule 41(a) [now RUSCC 14(a) ] is not equivalent to a decision that this court has subject matter jurisdiction, may treat the noticed person as a party in interest, or could render a judgment against that person.

*Id.* at 420. But rather, RUSCC 14(a) has as its apparent purpose the provision of an opportunity, without compulsion, for a person to appear and protect his/its interest

and, concomitantly, it precludes "the third party in question from retrying issues of law and fact already resolved by this court in the third party's absence." *Id.*

Thus, in view of the foregoing and in the exercise of its sound discretion, having found as a fact that the State of Georgia is alleged to have an "interest" in this pending matter, this court may grant plaintiffs' delinquent motion for a "Rule 14 Order" only if it finds the existence of a "good cause shown" for their failure to file said motion "at the time the complaint [was] filed." To be entitled to a favorable ruling on the facts here, we believe, at the very least, that plaintiffs must make a persuasive showing as to why this court should countenance a waiver of the time limit prescribed in RUSCC 14(a)(3).

Plaintiffs cite no cases to the court delineating the applicable standard required to constitute "good cause"; in fact, they simply aver the facts quoted herein at page 36, *supra*. The substance of such is their bland assertion that they were unaware of the "precise" extent of the State of Georgia's involvement, *i.e.*, considerable contractual interest, in transactions forming the basis of this litigation at the time the complaint was filed. Moreover, it is observed that plaintiffs' motion(s) are not supported by affidavits.

Research has failed to unearth any case, in this or the predecessor court, in which the phrase "good cause shown" was defined under RUSCC 14(a)(3), or under its predecessor Rule 41(a). That being the case, this court will endeavor to frame, at the very least, a minimum "good cause" standard under RUSCC 14(a)(3) that must be met by the movant sufficient to entitle it to relief under RUSCC 14(a)(1). It is axiomatic that such burden, in any event, is on the movant, the plaintiffs here.

That which must be shown, *i.e.*, "good cause," is a highly abstract and relative term, which meaning must be determined by the verbal context of the source in which the term is employed. The phrase enjoys no universal or fixed meaning but,

instead, its import depends largely on the facts and circumstances in each case. It envisions, in the context used here, that one will proffer substantial and plausible reasons for having failed to timely act in a given case. On the other hand, bare conclusions constituting bland and cumulative excuses, including ignorance of the law, will not cut muster. Meritorious assertions tending to establish the ultimate fact depend in large measure upon the circumstances of each individual case, and the finding, the existence or absence thereof, lies largely within the sound discretion of the court. In short, we view the broad test to be whether the failure to act timely is marked by circumstances and a course of conduct that was reasonable and would cause a prudent man to perform likewise under the same conditions.

Examining the foregoing criteria against plaintiffs' showing, we find that they aver that subject motion was not timely filed, *i.e.*, at the filing of the complaint, because:

(i) they were unaware, at the time of filing the complaint, of the *"precise"* nature or extent of the State of Georgia's involvement in the transaction forming the basis of this litigation;

(ii) the State of Georgia's arguably considerable contractual interest was not revealed (*i.e.*, the "Federal-State Agreement") until *after* said filing and the initiation of discovery proceedings; and

(iii) plaintiffs have proceeded with "due diligence" and "have not been remiss in any particular" that will militate against said motion.

■ By use of the adjective "precise," *supra* (which means minutely or exactly), plaintiffs tacitly concede that they were in fact aware of the "nature or the extent of the State of Georgia's considerable involvement in the transactions which form the basis for [this] suit." We believe this admitted knowledge of plaintiffs was sufficient on these facts to cause a prudent person to file a contemporaneous RUSCC 14 motion at the time of filing its/his complaint. Support for this conclusion and the fact that plaintiffs were aware, at such time, of the existence of the "Federal-State Agreement," entered into on December 15, 1952, and effective January 1, 1952, is underscored by the following averment set forth in paragraph 18 of their complaint:

The Plan and Agreement *emblematize a negotiated contract between the State of Georgia and the United States* to which the Board is third-party beneficiary.

We believe and find, therefore, that the "negotiated contract" referred to above was in fact the "Federal-State Agreement" referenced above. To justify the above characterization of the "Plan and Agreement," it is only logical to assume that the plaintiffs were knowledgeable with respect to the contents of said "negotiated contract" at the filing of their complaint. Given such knowledge, which is reasonably inferable from the tacit admissions, we are compelled to find that the reasons proffered for the failure to file said RUSCC 14 motion, at the time the complaint was filed, lack the requisite "good cause show[ing]."

## CONCLUSION

■ It should be observed, in conclusion, that the requirement of a "good cause" showing under RUSCC 14(a)(3) is not a mere formality, but is a clearly expressed limitation on the use of RUSCC 14(a)(1) when the threshold filing date is not met. While we believe this rule should be liberally construed, such should not obtain to the extent that it vitiates the efficacy of said expressed limitation.

For the foregoing reasons, plaintiffs' motion for leave to file is GRANTED and their motion for a RUSCC 14 notifying order is DENIED.

IT IS SO ORDERED.