## CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH

In re Virginia Beach
Holding Corp.

### Case No. (Chancery) CH01-3375

BY JUDGE CHARLES E. POSTON

### March 31, 2003

This cause comes before the Court on a petition by Kana Corporation, a Virginia corporation, praying for the appointment of a special receiver for Virginia Beach Holding Corporation ("VBHC"), a defunct Virginia corporation. Because this matter has been litigated previously in the Circuit Court of the City of Norfolk, a brief discussion of the prior litigation is necessary.

On March 12, 1999, the City of Virginia Beach filed a Bill of Complaint against Edwin B. Lindsley, Jr., Nala Corporation, Fala Corporation, and Kana Corporation, seeking to void a January 13, 1995, decree appointing a receiver for VBHC. After extensive litigation, the Court vacated its January 13, 1995, decree that appointed a receiver for VBHC "because [the January decree] was procured by the fraud of the defendants Edwin B. Lindsley, Jr., and Nala Corporation." *City of Virginia Beach v. Nala Corp., Fala Corp., Kana Corp., and Edwin B. Lindsley, Jr.*, Chancery No. CH99-450-02 (Norfolk September 29, 2000) (Poston, J.) (letter opinion).[1] In its September 29, 2000, letter opinion, the Court also held that "none of the defendants [Nala, Fala, Kana, and Lindsley] owns or has any interest, through Soames Corporation, in land east of the platted lots between 5th Street and Rudee Inlet in the City of Virginia Beach." *Id.* The Court supported its holding by stating that "[a] routine and objective title examination would reveal that Virginia Beach Holding never owned any land east of its platted lots, and thus there was no interest that a receiver could convey." *Id.*

---

[1] 53 Va. Cir. 309. [Reporter's Note]

On August 1, 2001, the Virginia Supreme Court refused a Petition of Appeal in the Norfolk cause, thereby affirming the decision of that court. On October 22, 2001, Kana Corporation filed a "Petition to Appoint a Corporate Special Receiver" in the Circuit Court of the City of Virginia Beach. The petition alleges that:

> VBHC appears to be the fee simple owner of record for four elongated squares of oceanfront land beginning just west of the high water mark of the Atlantic Ocean, running parallel in width to the boundaries of the city roadways known as First Street, Second Street, Third Street, and Fourth Street.

Pet. to Appoint a Corporate Special Receiver ¶ 2. Kana filed a "Motion to Amend the Petition to Appoint a Corporate Receiver" on July 23, 2002. After hearing argument on July 25, 2002, the Court entered an order including the following provision:

> the Amended Petition lodged with the Court on 7/23/02 is withdrawn; the petitioner's motion to file an amended petition is granted, provided that it is filed within 21 days and contains *all* claims the plaintiff, its predecessors, or successors may have in lands lying within one mile west of the mean low water mark of the Atlantic Ocean in the City of Virginia Beach, Virginia.

Kana then filed a "Second Amended Petition to Appoint a Corporate Special Receiver" (Amended Petition) on August 15, 2002.[2] The Amended Petition contains the following descriptions of Kana's interest in real estate lying within the area located one mile west of the mean low water mark of the Atlantic Ocean in the City of Virginia Beach, Virginia:

> 2. A thorough review of the land records in this city shows that VBHC appears to be the fee simple owner of record for four elongated rectangles of oceanfront land beginning just west of the high water mark of the Atlantic Ocean running adjacent and parallel east to west to the boundaries of the city roadways known as Second Street, Third Street, and Fourth

---

[2] This is the only amended petition filed. The court never granted leave for Kana to file its "first" amended petition.

Street and Fifth Street. This land is presently used as thoroughfares for pedestrians accessing the Atlantic shoreline.

3. Further, it appears that VBHC may still be the owner of Atlantic shoreline between the mean-high-water-mark and the eastern boundaries of the parcels presently owned or occupied by hotels from Second Street to Fifth Street. Present surveys would show that this stretch of shoreline is now approximately 300 feet in width and is encumbered by a concrete walkway and bike-path built by the City of Virginia Beach.

4. Since VBHC owned a large tract of land extending from Fifth Street along and under Rudee Inlet south and southwest of 2nd Street, there may well be real property parcels in that entire area still owned by VBHC. In the time allotted by the Court in its order of July 25, 2002, the petitioner has not been able to determine fully the nature and scope of the VBHC title claims south of Second Street.

The parcels described in paragraph 2 of the Amended Petition are the same parcels described in the original Petition. Paragraph 3 of the Amended Petition describes parcels lying east of VBHC's platted lots. The Norfolk court held that VBHC never owned any land east of its platted lots. All of the parcels described in paragraphs 2 and 3 of the Amended Petition were included in the tract to which, under the Norfolk decree, Kana, Fala, Nala, and Lindsley, all defendants in the Norfolk cause, have no interest.

The Amended Petition's paragraph 4 is nothing more than an attempt to preserve any possibility that supports Kana's claim of ownership of real property through VBHC. Its statement that the court's order of July 25, 2002, allotted insufficient time "to determine fully the nature and scope of the VBHC title claims south of Second Street" is patently absurd. *Id.* at ¶ 4. Kana and its related parties, most specifically Lindsley, have been examining or causing to be examined land records of tracts in this vicinity for almost a decade — certainly since January 1995, the month in which Nala and Lindsley fraudulently procured the appointment of a receiver for VBHC.

The real property to which the Amended Petition specifically refers in paragraphs 2 and 3 is included in the tract to which, under the Norfolk decree, Nala and Lindsley have no interest. The general speculation of ownership interest in paragraph 4 asserts no cognizable interest in any property. Thus, Nala and Lindsley have no interest in any real property lying in the City of Virginia Beach, Virginia, from the mean low water mark of the Atlantic Ocean for a distance of one mile westward.

On May 29, 2002,[3] United States Court of Federal Claims, speaking through the Honorable Lawrence S. Margolis, gave full faith and credit to the Norfolk Circuit Court's findings pursuant to 28 U.S.C. § 1738. *Fala Corp. v. United States*, 53 Fed. Cl. 86 (2002). On April 14, 1998, Fala and Kana had also filed suit in the Federal court claiming to own the property at issue and seeking damages because the United States had erected a new seawall and dumped dredge spoils thereon. The Federal court, in its May 29, 2002, opinion, held that, through collateral estoppel, Fala Corporation and Kana Corporation were "bound by Judge Poston's findings of fact and conclusions of law, [and] are thus estopped from further litigating ownership of the property."[4] *Id.* at 90. This Court likewise holds that collateral estoppel precludes Kana Corporation from asserting VBHC's alleged ownership of the oceanfront property at issue.

Collateral estoppel "precludes the same parties to a prior proceeding from litigating in a subsequent proceeding any issue of fact that was actually litigated and essential to a final judgment in the first proceeding." *Glasco v. Ballard*, 249 Va. 61, 64 (1995). In order for collateral estoppel to apply, certain criteria must be present:

> (1) the parties to the two proceedings must be the same, (2) the issue of fact sought to be litigated must have been actually litigated in the prior proceeding, (3) the issue of fact must have been essential to the prior judgment, and (4) the prior proceeding must have resulted in a valid, final judgment against the party against whom the doctrine is sought to be applied.

*Id.*

---

[3] Although the United States Court of Federal Claims decree granting the defendant and defendant-intervenor's motions for summary judgment indicates that the court filed it May 28, 2002, LEXIS reports that the Court filed the opinion May 29, 2002.

[4] Kana argues that the Federal court's May 29, 2002, opinion is not final because it is currently on appeal. Kana, however, is incorrect in this assertion because, under federal law, a federal court decision is final despite the fact that the decision is on appeal. *Huron Holding Corp. v. Lincoln Mine Operating Co.*, 312 U.S. 183, 189 (1941) ("In the federal courts the general rule has long been recognized that while appeal with proper supersedeas stays execution of the judgment, it does not – until and unless reversed – detract from its decisiveness and finality."); *Nixon v. Richey*, 513 F.2d 430, 438 (1975) ("The federal rule is that pendency of an appeal does not suspend the operation of a final judgment for purposes of collateral estoppel, except where appellate review constitutes a trial de novo.").

Collateral estoppel applies in the case at bar because all the criteria have been met. First, the parties in this cause and the parties in the Norfolk proceeding are the same. In this case, both Kana Corporation and the City are parties. In the previous case, the City of Virginia Beach and Nala Corporation, Fala Corporation, Lindsley, and Kana Corporation were all parties. Second, the issue of fact that Kana seek to litigate in the case at bar is the exact fact that the Court determined in the previous case: the ownership of the " 'unplatted area' bounded on the west by the eastern boundary lines of the lots and blocks shown on it and the eastern boundary lines of 2nd, 3rd, 4th, and the southern half of 5th Streets." *Virginia Beach v. Nala Corp. et al.*, Chancery No. CH99-450-02 (Norfolk September 29, 2000) (Poston, J.) (letter opinion). The Norfolk Circuit Court explicitly held that "[n]either the 'unplatted area' nor the 'unplatted parcels' exist" and that VBHC "never owned any land east of its platted lots, and thus there was no interest that a receiver could convey." *Id.* Third, this issue of fact was essential, not incidental, to the judgment in the previous litigation, because it showed that VBHC had no interest in these lands that a receiver could convey and that the defendants had committed a fraud on the court. Kana had a full and fair opportunity to litigate this issue in the prior action. It was one of the major facts that the City argued in support of its cause of action against Kana and the other defendants. Finally, the prior proceeding resulted in a final, valid judgment against Kana, the party against whom the City is seeking to apply the doctrine.

For these reasons, the doctrine of collateral estoppel bars relitigation of these plaintiffs' ownership interest in the subject real property. Because VBHC has no interest that a receiver can convey, Kana Corporation's petition to appoint a receiver for VBHC is dismissed with prejudice.

The Court retains jurisdiction to hear the City's motion for sanctions as well as other matters remaining unresolved in the pleadings. These matters are set for trial on April 14, 2003. It is so adjudged, ordered, and decreed.

May 27, 2003

The City of Virginia Beach, third-party intervenor in this cause, seeks an award of sanctions against the petitioner Kana Corporation, the third-party defendant Edwin B. Lindsley, Jr., and the attorney for Kana and Lindsley, Stephen Merrill, Esquire. For the following reasons, the Court declines to award sanctions in this cause.

The Virginia Supreme Court has consistently used an objective standard of reasonableness in reviewing decisions concerning sanctions under Code § 8.01-271.1:

> In reviewing a trial court's award of sanctions under Code § 8.01-271.1, we apply an abuse of discretion standard. In applying that standard, we use an objective standard of reasonableness in determining whether a litigant and his attorney, after reasonable inquiry, could have formed a reasonable belief that the pleading was well grounded in fact, warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and not interposed for an improper purpose.

*Flippo v. CSC Associates III*, 262 Va. 48, 65-66 (2001), citing *Gilmore v. Finn*, 259 Va. 448, 466 (2000). Merrill asserts in his letter of April 30, 2003:

> Yes, the Norfolk decision,[5] in effect, made ownership of the four pedestrian routes useless for financial purposes because the decision implied a public easement in the nature of a street over that land. But nothing in the Norfolk decision precluded a finding that VBHC still owned the fee simple for the four pedestrian routes. As the City's own opening statement at the recent hearing makes clear, the land beneath a city street usually remains owned by private parties. That certainly was also true in 1926 when VBHC dedicated this property by implication and usage to public access. If VBHC was arguably still the fee simple owner of record and Kana Corporation had done everything required by law to buy that defunct corporation, the client could still be saved.[6] So the decision to go forward was made. It was a reasonable choice at the time.

---

[5] The decision mentioned is the holding in *City of Virginia Beach v. Nala Corp.*, 53 Va. Cir. 309 (Norfolk 2000).

[6] The Court assumes that this is a reference to *Fala Corp. and Kana Corp. v. United States and the City of Virginia Beach*, which was pending in the United States Court of Federal Claims. That court declined to award sanctions against the plaintiffs. Upon appeal to the United States Court of Appeals for the Federal Circuit, the case was remanded on April 29, 2003, for reconsideration of the issue of sanctions. 2003 U.S. App. LEXIS 8330 (unpublished, April 29, 2003).

When tested against the standard prescribed in *Flippo*, the Court cannot conclude that the parties prosecuting this cause acted unreasonably. The Court, then, will not award sanctions against them.

With respect to Lindsley, the Court's decision against sanctions rests on yet another basis as well. On March 25, 2003, the Virginia Beach Circuit Court found that Lindsley was incapable of handling his own affairs and appointed a conservator to manage his estate. While that decree recites testimony indicating that Lindsley was incompetent some six weeks before the cause at bar was filed, the decree itself does not make that finding. The City asserts that this decree is not binding on the City in the instant cause because it was not a party to that proceeding.

At the trial of this matter, Dr. Anne Redding, a neurologist, testified as an expert witness. She had examined Lindsley several times beginning in 2001, ordered a variety of tests to be performed on him, and reached a conclusion that was bolstered by her later evaluations of him. She testified that Lindsley was incapable of managing his own affairs at least as early as September 13, 2001, some weeks before the cause at bar was filed. Her testimony was most credible and was not contradicted. This conclusion was supported by the testimony of two lay witnesses who had known Lindsley very well for many years. Without addressing the City's argument that it is not bound by the finding of that decree, the Court finds that Lindsley was legally incompetent and unable to manage his own affairs as early as September 13, 2001.

The Court, then, declines to make an award of sanctions. The City, being the prevailing party, in this cause shall have the statutory costs on its behalf expended to be taxed by the Clerk.